Good morning, ladies and gentlemen. Before we begin, I want to thank again Judge Eugene Seiler from the Sixth Circuit for joining us today. Gene has been a great friend of our court and helped us on many occasions, and thank you again for coming out and assisting. With that, we'll proceed to the first case on the oral argument calendar, which is Pedroza-Maldonado v. Garland. You may proceed. Bridget Cambria Good morning, Your Honors, and may it please the Court. My name is Bridget Cambria, and I represent the petitioner, Mr. Pedroza-Maldonado. I respectfully reserve two minutes for rebuttal. Your Honors, I would like to start with a roadmap for this case. Mr. Pedroza-Maldonado is entitled to have his in absentia order of removal reopened for two reasons. First, his second motion to reopen is permitted on the basis of equitable tolling, and second, that his original motion to reopen should have been granted because the missed hearing on November 4, 2019, was due to exceptional circumstances. Judge Seiler I need to ask you a question, just because I was involved with this family previously on the case when they were trying to put the airplane that had hit the head and all of that. And I note here, it's, all right, the government has separated out the other family members and why is your client in a different position than they are? Because apparently the other family members are getting some sort of path for relief. Why is your client not in the same position? I know that there were allegations back previously, something about your client being a gang member in Guatemala trying to get out of a gang. So are they, is the government opposed to letting him stay? Judge Seiler Your Honor, I'm not aware of that fact being in this record. I do know that the family had issues as a result of the gangs in Guatemala. However, the reason... Judge Seiler Well, I know, but they're, but they're giving the other, everyone else got split off and they have a path and you're, they're not showing any mercy towards you. Why is that? Judge Seiler It's a, that's a question for the government, but the only answer that I have is that there was an agreement in a collateral case involving the injury to the minor and his detention and that they offered relief to mother and the two children, but did not offer the same relief to the father. The other difference is that the father had been deported from the United States. So following separation, they were placed in different facilities and the father was in fact removed from the United States. We were able to prevent the removal of the mother and minor child based on the injury that this child was suffering and the injury that he needed treatment for. It at least delayed the removal process for them. And in... Judge Seiler Okay, I'll ask them if that, it seemed curious to me. I, it, I can't help my curiosity. Judge Seiler I share your curiosity, Your Honor, and it's actually one of the tragic parts of this case is that now we do have a separated family unit and frankly, an asylum claim for a family is really fact specific and each member of the family has an important part in that asylum process. So what happened is that the mother and children lost a witness. They lost the lead petitioner. They lost the, some of the factual basis on which they would be able to succeed in an That's part of the tragedy of this case. And it's one of the reasons that we are very staunchly pushing to reopen this proceeding for the petitioner, because if the proceeding is reopened, then we can go to the government and ask for his return to the United States and we can ask to reunify this family so that they have one asylum hearing for an intact family unit, Your Honor. But what's before this court today is the second motion to reopen that was filed by originally the intact family. But now in this case, we have the sole petitioner, Mr. Jose Pedroza Maldonado. He has the issue of this being a second motion to reopen. Traditionally a movement in immigration proceedings is allotted one motion to reopen. And in this case, he filed the one motion to reopen more or less, less than one month after the original order of removal when they inadvertently missed a hearing because they had confusion with two confusing letters that they had received regarding the date. Well, as a father still involved in this case, can he still get relief here? He can get relief in this case, despite there being a removal, the Ninth Circuit recognizes that the departure bar does not apply for motions to reopen in absentia. So this motion is properly before this court and if the case is reopened, we can seek his return to the United States for the purpose of continuing his removal proceedings. Your Honor, for the equitable tolling issue in this case, reaching the second motion to reopen, we have to establish that there was deception, fraud or error with the failure to meet the 30 day appeal deadline of the original denial of the motion to reopen and that the petitioner act with due diligence in discovering the deception, fraud or error. In this case, we would push the court to find that the child's injury during the appeal period constituted a circumstance beyond the control of the petitioner that related to his ignorance of the 30 day appeal window. And that's where the error occurred. Your Honor, the Ninth Circuit has recognized that equitable tolling is read into every federal statute and the Ninth Circuit has recognized equitable tolling of the numerical limits on motions to reopen in certain circumstances. The majority of those that we could find involved fraud or ineffective assistance of counsel. But I would urge that this court not limit equitable tolling of the numerical limitations to those instances. So even if we do that, you still have to get over the exceptional circumstances bar. Is that correct? And the BIA's finding that the petitioner did not demonstrate exceptional circumstances to excuse his absence from the hearing. And isn't that a factual determination that is entitled to some deference? That is correct. The second issue that this petitioner would have to address is that exceptional circumstances existed at the original hearing. I don't think that it's a, it is definitely a fact specific inquiry, but the facts in this case certainly lend itself to establish. But if it is fact specific and that factual determination is made, what deference is the BIA entitled to in making that? Well, Your Honor, we would argue that they abuse their discretion in denying this motion and finding that exceptional circumstances didn't exist in this case. And I would urge the court to look at a case that was decided just last year in 2021, Hernandez-Garland, which found that, which actually, let me go to the standard that's outlined in that case. In Hernandez-Garland, they outlined five factors that a court should look at to determine in the totality of circumstances, looking at the particularized facts of the case. Can you establish exceptional circumstances? The first factor is the severity of the impediment to appear. So in this case, it's the confusion between the two notices. And unfortunately, I've seen this happen multiple times in motions to reopen where immigrants receive multiple notices, one from the Department of Justice, one from the Department of Homeland Security, and ignorance to knowing the difference between those agencies. In this case, there was that confusion, and it's a reasonable explanation that was offered by the mother petitioner in this case as to why they missed that hearing. The second factor is whether the petitioners did all they reasonably could to have their cases heard promptly. In this case, they filed their motion to reopen about 10 days after the order was issued. That includes the mailing time, time to get an attorney, time to hire an attorney, to pay the fees, to draft the motion, and to get it on file. They very much exercised diligence in this case. The third factor, whether they never had their day in court. In this case, their asylum case still has never been heard, and Mr. Pedroza-Maldonado has never had an asylum claim before a court. Four, whether they had a motive for failing to appear. There was no motive in this case. They appeared at their original master calendar hearing, and they had relief available to them. And they exercised diligence immediately after missing the hearing. All of those indicate no motive for failing to appear. And then the fifth factor, which is the most important, whether the order causes unconscionable results. And in this case, we certainly have unconscionable results. Well, doesn't the fact that the removal proceedings have been reopened for the petitioner's mother, well, the mother and the children, weaken your unconscionability argument? Your Honor, I don't believe that it weakens it. It certainly is a dent, but I don't believe that it weakens it to the detriment of this petitioner. He is separated from his children. The separation of a parent from a family unit is a severe and unconscionable result. We would argue that. They suffered detention, and his son experienced a lessening of health as a result of what happened. I believe that all of this could be corrected, and the unconscionable result could be corrected by the reunification of the family. And I understand that I'm very close to time, so I will reserve the rest of my time unless there are further questions. Thank you, counsel. We'll hear from the government. Good morning. My name is Mona Youssef, and I represent the respondent, the Attorney General, in this case. If it may please the court, I understand the court's concerns about the separation of the family, but if I may, with your indulgence, first address the exceptional circumstances prong. Respondent believes that really that's the only agency finding that the court needs to review here, because regardless of whether or not the motion, the second motion to reopen is time barred, as the court pointed out, there still needs to be a showing that exceptional circumstances prevented this person from appearing for his hearing. Right. But one of my concerns is that equitable tolling was raised before the BIA, perhaps not artfully or in depth, but it was raised, and the BIA didn't address it. So under our case law, don't we have to remand that issue to the BIA to determine in the first instance? Well, actually, I mean, it would be futile to do so, because the government still believes that if the court agrees with the government that they fail on the exceptional circumstance claim, then it would be futile to remand it back for whether or not the second motion to reopen was number barred. You agree that neither the BIA nor the IJ addressed equitable tolling as such? Well, the IJ tried to, because it was a little confusing with the equitable tolling, because it's usually, as counsel said, something with attorney error. And the IJ held that there didn't seem to be an ineffective assistance in counsel claim, but assuming that there was, they didn't go through the whole Rosada. So I think it just wasn't related clearly enough. So they use equitable tolling in the brief to the BIA, and I don't see the words equitable tolling anywhere in the BIA decision. Do you agree? No. You're correct. Absolutely. You're correct. But as I would argue that, yes, that was a mistake, but in this case, it's harmless error, because even if the board had found that there should have been equitable tolling, they still would have had to meet the burden of exceptional circumstances. And in this case, and I understand there's a sympathetic element with the child, but the injury to the child occurred in December, after petitioner didn't appear for his second immigration hearing, which was in November, and therefore, lawfully ordered removal abstentia. Relevant here is that petitioner did appear for his first hearing, and at that hearing, the immigration judge, using a Spanish interpreter, told him to return back to the court on November 4th in the same courtroom, and he gave him a written notice confirming that statement. And as you know, when a judge tells you to show up, you're supposed to show up. But despite the IJ's direct oral directive in Spanish and the written notice, which looked just like the notice that he responded to, that he received around August 7th, and he showed up to the courthouse, instead, he decided he gave greater weight to a subsequent letter that was clearly marked from the Department of Homeland Security that really looked nothing like the two prior hearing notices. So if you look at the hearing notices, which are found on page 188 and 216, and you compare that with the letter that they received from DHS on page 170 and the envelope on 171, they look nothing alike. Is there a phone number that they're given that they can call if they have any questions on any of the notices? I believe there is one on the, let's see, I'm looking at the, I don't, there is a number on the DHS letter, and there's usually typically one on the, for the immigration court as well. Usually you can dial in and there's a recording and you type in your A number and it'll tell you when your next hearing date is scheduled. For example, if you were to do that now with his wife, you would hear that their first master calendar hearing before the immigration court is August 22nd, 2022. What's the significance of the fact that it's been granted to have a reopen of the case before the BIA for the mother and children? Is that just going to be a regular hearing or is it just going to do it on paper? I believe the intention was for, petitioners intended, and this was a better question for opposing counsel, is that they're going to file for asylum. Because in this record, there is an asylum application filed by the mother that was presented with the second motion to reopen. And it seems like she's claiming asylum based on a particular social group. And she argues that her husband, who's the petitioner in this case, was threatened in Guatemala because he was forced to work with the local gangs and he wanted to stop working for the local gangs. And there was also a claim that they feared that the child that was injured in the United States, when he fell out of a shopping cart, would receive discrimination as being a disabled person there, might not be able to meet their medical help and educational needs. So is there anything negative about Mr. Pedroza-Maldonado that like, that why, you know, like, for example, sometimes DHS, you know, sometimes the government says, well, we're not going to keep you because you're a gang member, you're this, you're that. I mean, was there a reason to differentiate between the mother and the children and the father? I reached out to DHS and I did ask that same question. And what it seems to appear happened was they were, after the immigration and reception orders became final, they were taken into detention. The mother and the children, I believe, were taken to Texas and the father was taken to California. And that was on January 21st. And then on February 7th, the mother and the child filed a TRO before the court in California, the district court, saying, please don't remove us because my child will suffer harm by being put on a plane. I don't know why petitioner, the father, wasn't included in that. So by the time the TRO case was denied by the district court, it went up before, I believe, your panel, your honor, in the Ninth Circuit, then was sent back to the district court. By that time, the petitioner was long gone. He had already been removed. Right. But there's nothing unusual in terms of like a criminal activity. It's just simply an administrative process. It was he was just wasn't a party for some. I mean, the TRO was denied by the district court before he was even removed. So I don't know why he wasn't included as a party in the district court hearing. I have absolutely no idea. But the reason that they settled in the district court basically is and it's a nice summary. It was actually submitted. The settlement agreement was submitted by petitioner on 9721, Exhibit A in their filing summarizes what happened. And basically the government decided to settle with the mother and children because this had turned into a big basically a document of medical documents and the government would have to have hired medical experts. And it was turning into a very big deal. So when petitioners offered to say, please reopen our proceedings, the government took it as the best resources. It's easier to have them have a second chance at the apple. And I asked DHS whether or not they reopened because they thought that the claim was legitimate, the asylum claim. And they said, no, it had nothing to do with that. It was basically a practical reason for litigation resources to settle this case. Well, let me ask you this. We if would now that this person's he at least he's in Guatemala, as I understand it. Would there be any reason not to reason to just send it to mediation and see if there could be a mediation as to his petition? And if not, well, this one right here, you send it to mediation before we issue our decision and then. Yeah, either I mean, the government could agree to let him reopen, but if the government didn't, then we rule on the merits. Well, the government didn't agree to reopen based on these current circumstances. But I really think the best you can either proceed to decision and as our stance would be is that, you know, to deny the petition because of the lack of exceptional circumstances. The other alternative, which the government is also amenable to, is maybe holding the case in advance because petitioner has and this would be the proper course to do it. Petitioner has indicated that they're going to file a motion to reopen before the CIA because of the new Singh decision that was that was issued by your court recently. So his proceeding can be reopened that way and we can hold until that happens. And there's also the advantage of holding the case because if petitioner's wife's application succeeds before the immigration court, he would be able to be brought back into the country as somebody who is a derivative applicant who's joining his wife in this country. So he does there is still opportunity for him to have relief based on his wife's application. But we have to see how that plays out, because right now I don't believe it's been filed. And of course, that's the immigration judge's first call. I see that I'm out of time. Let me ask, if you don't mind, one more question on on exceptional circumstances. Yes. As you know, there are generally the factors that are considered in determining whether exceptional circumstances exist. And I don't see any discussion of those factors in the BIA decision. It basically is, as I read it, it just says confusion is not enough. End of story. Well, they cite to the statute and typically the INA does say they do cite to 12, I'm 229AEI, which says that in exceptional circumstances, this is defined as cruelty, battery, serious illness or death of the non-citizen, a parent or a child or a spouse of that non-citizen for failing to appear that's beyond that person's control, but not less compelling circumstances. So the fact that he either misread the notice or he didn't obtain help translating the record, there's no indication that he asked somebody, hey, what does this letter say, as he probably did with the first notices and the in absentia order, because those documents are much more dense. So this is able to understand that or get help understanding those documents. I understand the factual posture of this case, and I understand the deference we owe, but our case law sets forth a series of factors that should be discussed. Well, what is which factors are you talking about? We're talking about, well, the council went down in terms of the Ninth Circuit. I mean, it's your position, I suppose, is that that doesn't apply. But I'm sorry, Your Honor, the Hernandez decision that a council discussed was actually which is a 19, 2016 case that elucidates some factors. So, I mean, the must look at the facts presented and they did do that. There's just no discussion. So, I mean, my concern is we don't have a an agency determination of the facts that would be applied to the factors in that consideration. I mean, I think you would agree that basically that what the BIA said was they were confused and that's not enough. Yes. OK, very good. Yes. Questions. All right. Thank you for your time. All right. Thank you, counsel. We'll hear rebuttal. We'll give you two minutes. Thank you, Your Honor. First, I wanted to state that I do share the concern with the BIA that the total bar was settled in that decision in a single sentence and there was no discussion of equitable tolling at all. I also would say that the discussion regarding exceptional circumstances also was insufficient. I believe it was limited to a single paragraph. It didn't go through any factors at all, except for the ones that Your Honor just raised. I also want to just talk a little bit about the exceptional circumstances in this case and how it relates to Hernandez-Galan because it does. I mean, I've seen people, I've seen people, I've seen cases where the exceptional circumstances are even that are less than yours. And the court says that they weren't exceptional. It's a pretty harsh standard. It is a harsh standard, Your Honor. But I believe if you go through the factors that that a judge is required to, the totality of circumstances in this case, I think we can meet the standard for exceptional circumstances. And I think it's important to understand that there are so many families that are placed on these accelerated dockets, especially in Los Angeles, it's one of the selected courts, where they get these confusing notices and they can't decipher what's the difference between checking in with ICE and what's the difference. Well, and then everyone's going to have exceptional circumstances and it's good. You're asking for an expansion that I'm not really comfortable with. But let me ask you about the government didn't really, what if we referred this to mediation and looked at with everything that's going on, that the mediator, you know, we have some success there sometimes where they can, people can agree to certain things. If this happens, then that'll happen. And then a lot of times they come back somewhat resolved to us. Would you be amenable to something like that? Your Honor, I've always been amenable to talking with the government about this case. We've consistently asked them to include the father in the agreement. But then afterwards, even after that, whether they would change their mind and consider joining a motion or not, not opposing a motion to reopen in this case, I'm totally amenable to. I mean, we have more power than either of you. And ultimately, we're going to decide the case. And so sometimes people, when they talk to mediators, they take different positions. So we never know about them. But then it comes back to us that somehow parties have reached some sort of agreement as to how, you know, but we don't like cases just hanging out there waiting for a womb. What if this happens? What if that happens or whatever? It might just be worth the discussion. I agree and I understand, Your Honor, my number one goal is to have the family together and to have an asylum case heard. That's my number one goal. So if that's the result of mediation, I'm extremely for that. I would caution that waiting, for example, for them. I'd say your number one goal today would be to not lose. That's right. Yes. I'm a pretty basic person. So, I mean, I think that's everyone's number one goal. But then that being said, questions have been asked by all of us that could make either of you realize that you have certain weaknesses in your case that might make you more openly speak with each other. I understand that, Your Honor, and I just would say that we certainly would urge the court to grant the petition of Mr. Pedroza-Maldonado if no other decision is reached between the parties. We do believe we merit a grant in this case. And I believe that we can establish exceptional circumstances based on the particularized facts of this case. And we also agree that the BIA and the immigration judge actually never applied the proper standard in this case. So you still have your pending motion to hold this case in abeyance, correct? That's correct, Your Honor, and the reason that we filed that was the intervening case in Singh. The notice to appear in this case for the petitioner is defective, as is the case. So what would happen is the board would have to consider in the first instance whether it qualifies for rescission and reopening. So it really would be back in the BIA's court. Oh, correct. But I guess I'm wondering, just simply holding the case in abeyance may or may not make any difference on your new motion to reopen, correct? That's correct, Your Honor. It is a it is a collateral issue. And if this court would rule for us, that's that's a positive for Mr. Pedroza-Maldonado. And he could he can subsequently, regardless of the decision of the court, file another motion and it would be collaterally decided outside of the decision of this court. Very good. Any further questions? OK, thank you both for your arguments this morning. They've been very helpful to the court and the case just argued will be submitted for decision.
judges: Siler, THOMAS, CALLAHAN